UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| N/A | N/A | |

**Proceedings:** IN CHAMBERS ORDER RE Defendants Motions for Summary Judgment and Judgment Thereon [33, 38]

**I.    Introduction**

This civil rights action arose when defendants Upland Police Officers Michael Boyle ("Boyle") and Luis Munive ("Munive") were dispatched to Plaintiffs' residence to perform a welfare check. They were dispatched to Plaintiffs' home because an FBI agent informed the Upland Police that Adrian Osborne ("Adrian") and/or plaintiff Pamela Osborne ("Pamela") ordered a "suicide kit." While the facts of this case are heavily disputed, it is undisputed that Upland Police officers entered the Osborne residence without a warrant, used some amount of physical force on Adrian and his son—plaintiff Jonathan Osborne ("Jonathan"), and arrested both Jonathan and Adrian for resisting or obstructing an officer in violation of California Penal Code § 148(a)(1).

On November 21, 2013, plaintiffs Jonathan, Pamela, Robert Osborne ("Robert"), and Derek Osborne ("Osborne") filed suit in this Court. (Dkt. 1.) On May 30, 2014, this Court granted in part Defendants' motion to dismiss. (Dkt. 25.) In relevant part, the Court denied Defendants' motion to dismiss Plaintiffs' Fourth Amendment unreasonable search, unreasonable seizure, and excessive force claims on qualified immunity grounds. (Dkt. 25: Order 5–11.) The Court also denied Defendants' motion to dismiss Plaintiffs' malicious prosecution claim and their familial/spousal relationship claims. (Dkt. 25: Order 12–16.) Additionally, the Court bifurcated Plaintiffs' *Monell* claim.

On July 1, 2014, Plaintiffs filed their First Amended Complaint ("FAC") against defendants City of Upland, Boyle, Munive, Sergeant Barry Belt ("Belt"), and Upland Chief of Police Jeff Mendenhall ("Mendenhall"). (Dkt. 32.) In their FAC, Plaintiffs assert claims under 42 U.S.C. § 1983 for: (1) unreasonable seizure of person in violation of the Fourth Amendment (the "unconstitutional arrest claim"); (2) excessive force in violation of the Fourth Amendment; (3) unreasonable entry into, search, and seizure of private residence (the "unreasonable search and seizure claim"); (4) violation of the First

                                                                    :

                                        Initials of Preparer         PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

Amendment right to petition the government; (5) violation of the First Amendment Right to freedom of speech (the "First Amendment retaliation claim"); (6) malicious prosecution in violation of the Fourth and Fourteenth Amendments; (7) interference with parent-child relationship in violation of the Fourteenth Amendment (the "familial relationship claim"); and (8) loss of spousal relationship in violation of the First, Ninth, and Fourteenth Amendments. (Dkt. 32.)[1]

Presently before the Court is Defendants' motion for summary judgment. (Dkt. 44.) For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The Court also BIFURCATES AND STAYS Plaintiffs' First Amendment right to petition, First Amendment retaliation, familial relationship, and spousal relationship claims.

**II. Statement of Facts**[2]

On June 13, 2011, FBI Agent Edgar Fritz ("Fritz") contacted Upland Police and requested that the police perform a welfare check on Adrian and Pamela because an FBI investigation of a woman selling suicide kits had uncovered a purchase order submitted by Adrian and/or Pamela. (Defs.' SUF ¶ 1; Pl.'s Ex. P1.)

Boyle asserts that on June 13, 2011, at 4:34 PM, he was working uniform patrol in a marked police car when he was dispatched to the Osborne residence. (Boyle. Decl., Ex. A, at 4.) Boyle and Munive both claim that when they initially went to the Osborne home they knew that the FBI had told the police that Pamela and/or Adrian had ordered suicide kits and that the FBI was concerned for their safety. (Boyle Decl. ¶ 4; Munive Decl. ¶ 4.) Boyle asserts that he saw a vehicle in the front of the residence, which he learned was registered to one of the Osbornes. (Boyle Decl., Ex. A, at 4.) Boyle and Munive knocked on the front door several times and rang the doorbell. (*Id.*) They claim that they also announced that they were the police. (Boyle Decl. ¶ ; Munive Decl. ¶ 10.) According to Munive, he heard noises and movement from within the residence. (Munive Decl. ¶ 10.) The officers also heard a phone ringing inside the house. (Boyle Decl., Ex. H.) Nevertheless, nobody answered the door in response to their knocks and announcements. (Boyle Decl. ¶ 11; Munive Decl. ¶ 10.) Jonathan asserts that he was home alone and heard knocking, but that he was then using the restroom and therefore didn't

---

[1] Plaintiffs also assert a failure-to-train claim under *Monell*. (*Id.*) Because this Court previously stayed this claim, it is not currently at issue. (Dkt. 32.)

[2] Because the facts are well known to the parties, the Court here recites only those facts relevant to the instant motion. For a thorough summary of the facts as alleged in the original complaint, see this Court's May 30, 2014 Order. (Dkt. 25.) The Court notes that the facts of this case are heavily disputed and that the Court here recites the facts solely for purposes of the current motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

answer the door. (Jonathan Decl. ¶¶ 3–6.) He further asserts that he didn't hear the officers announce that they were police. (Jonathan Decl. ¶ 9.) Thus, when he noticed what he thought was someone trying to pry open the window to his mother's room, he thought the house was being burglarized. (Jonathan Decl. ¶ 10.) He claims that he therefore called Adrian's cell phone and told him that someone was trying to break into their house. (Jonathan Decl. ¶ 11.) Adrian and Robert (Jonathan's brother) were on their way home from the drug store when Jonathan called. (*Id.*)

Plaintiffs assert that Boyle and Munive climbed over a "locked"[3] gate into their backyard. (Jonathan Decl. ¶¶ 14–19.) While in the backyard, Boyle first saw Jonathan through a sliding glass door. (Jonathan Decl. ¶ 20; Boyle Decl. ¶ 11.) The Osborne's house has a rear sunroom with one sliding glass door leading to the backyard and another, inner sliding glass door leading to the kitchen. (Jonathan Decl. ¶¶ 17–18.) Boyle announced himself as the police and asked Jonathan to come to the back door. (Boyle Decl., Ex. H; Osborne Decl ¶ 23.) Jonathan allegedly complied with this request. (Boyle Decl., Ex. A, at 4.) Boyle asked Jonathan if anyone else was there. (Boyle Decl., Ex. H.) Jonathan informed Boyle that he had called his father and told his father someone was about to break in. (*Id.*) Jonathan also told Boyle that his father would be home in two minutes. (*Id.*) Jonathan told the officers that no one else was home. (Defs.' SUF ¶ 3.)

The facts surrounding the ensuing events are heavily disputed. Plaintiffs assert that Boyle entered the sunroom through the rear sliding glass door and then asked if he could come in and talk to Jonathan. (Jonathan Decl. ¶¶ 27–28.). *But see* (Boyle Decl. ¶ 13) (stating that he and Munive were standing outside the house speaking with Jonathan when Adrian and Osborne emerged). Boyle asked Jonathan if he could come inside and talk to him. (Boyle Decl., Ex. H; Jonathan Decl. ¶ 28.) Jonathan refused consent but told Boyle that he could come around front and that they could talk outside. (Boyle Decl., Ex. H; Jonathan Decl. ¶ 29.) Boyle told Jonathan the police were there for a safety check. (Jonathan Decl. ¶ 35.) As Jonathan spoke to the police, Adrian emerged from within the house, followed shortly by Robert. (Boyle Decl. ¶ 13.) Jonathan claims that the officers were forcibly taking him outside of the rear of his house when his father arrived in the back yard. (Jonathan Decl. ¶ 40.) The officers claim that they were merely speaking with Jonathan outside of the house when Adrian emerged. (Boyle Decl. ¶ 13; Munive Decl. ¶ 12.)

Once Adrian arrived, an increasingly heated conversation ensued between Adrian, Jonathan, and the officers. (Boyle Decl., Ex. H.) At some point before or during this conversation, Belt arrived at the Osborne residence to provide backup support. (Belt Decl. ¶¶ 2, 8.) According to Boyle, when he and Belt moved toward the rear sliding glass door, Jonathan frantically moved from the rear wall (where

---

[3] Plaintiff asserts that the gate was "locked" shut by a brick positioned under it that could only be removed from behind the gates. (Jonathan Decl. ¶ 16.)

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

Boyle claims he was standing) to block Boyle's path toward the open door. (Boyle Decl. ¶ 23.) Boyle claims that he reacted by using his hands and "simply plac[ing]" Jonathan on the ground and handcuffing him. (Boyle Decl. ¶¶ 23, 25, 35–36.) Munive claims that Boyle and Belt then entered the Osborne house. (Munive. Decl. ¶¶ 23–24.) Munive asserts that shortly thereafter Adrian stood up and tried to approach the rear sliding glass door, and that Jonathan also tried to stand up. (Munive Decl. ¶ 24.) While Munive struggled with Jonathan, Belt and Boyle exited the house and attempted to regain control of Adrian. (Munive Decl. ¶ 26–27.) Defendants claim that Adrian physically resisted being handcuffed, struggled with officers, and that they therefore pressed Adrian against a wall in order to gain control over him. (Boyle Decl. ¶¶ 38–40.) Boyle claims that he applied pressure only on Adrian's arm and shoulder, and that he did not press Adrian's head into the window. (Boyle Decl. ¶ 40.)

     Plaintiffs claim that neither Adrian, Robert, nor Jonathan ever tried to physically block the officers from entering their home. (Jonathan Decl. ¶ 54.) Jonathan claims that when he verbally protested the officers' actions, he was "brutally slammed down onto the ground, handcuffed, [and] was injured[.]" (Jonathan Decl. ¶ 45.) Jonathan further claims that when Adrian verbally protested the way the officers treated Jonathan, Adrian's arms were "brutally yanked behind him[.]" (Jonathan Decl. ¶ 61.) He further alleges that the officers ran Adrian ten feet across the backyard and slammed Adrian's head into a window, causing the window to break. (*Id.*; Steering Decl. Ex. I.) At some point in the scuffle Boyle warned Adrian that if he continued his actions he would be tased. (Boyle Dec. ¶ 43.) However, Boyle never used his taser on Adrian or on the other Osbornes present at the time. (Boyle Decl. ¶ 43.) Robert was also handcuffed. (Boyle Decl, Ex. A, at 5.)

     It is undisputed that police officers then entered the house without a warrant. (Defs.' SUF ¶ 6.) Jonathan claims that he, Adrian, and Robert were seated against the wall for part of the search, that he and Adrian were thereafter placed in the back seat of police cars, and that officers then searched the house for over an hour. (Jonathan Decl. ¶¶ 67–68.) Jonathan and Adrian were arrested for "obstructing, delaying, and or resisting arrest[.] (Boyle Decl, Ex. A, at 4.) According to Plaintiffs, while Robert was not arrested, the officers seized his cell phone because Robert told them that he was recording them. (Jonathan Decl. ¶¶ 77–79.)

### III.    Legal Standard

     Federal Rule of Civil Procedure 56 requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

     The moving party bears the initial burden of establishing the absence of a genuine issue of

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). On an issue for which the moving party does not have the burden of proof at trial, the moving party may satisfy this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has met its initial burden, the nonmoving party must affirmatively present admissible evidence and identify specific facts sufficient to show a genuine issue for trial. *See id.* at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A scintilla of evidence or evidence that is not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## IV.     Analysis[4]

### A.     Fourth Amendment Unreasonable Search and Seizure Claim

Defendants argue that they are entitled to qualified immunity from Plaintiffs' claim that Boyle, Munive, and Belt unreasonably entered and searched the Osbornes' home and unreasonably seized Robert's cell phone.

#### 1.     Legal Standard

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir.) *cert. denied*, 135 S. Ct. 455 (2014) (quoting *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc)). To determine if an officer is entitled to qualified immunity courts consider "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The "clearly established" prong of the qualified immunity test asks whether the constitutional right allegedly violated was "sufficiently clear that every reasonable official would have understood that

---

[4] As a preliminary matter, the Court notes that while Plaintiffs bring their unconstitutional arrest, excessive force, and unreasonable search and seizure claims against all defendants, there is no supervisory liability for lower officials' acts under 42 U.S.C. § 1983. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). These claims do not plead that Mendenhall was personally involved in or causally connected to the alleged deprivation. Similarly, there is no municipal liability under § 1983 except for a policy or practice claim under *Monell*. The Court therefore ORDERS Plaintiffs to show cause why judgment shouldn't be entered in favor of Mendenhall and the City on each of these claims.

|   |   | : |   |
|---|---|---|---|
|   | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

what he is doing violates that right." *Id.* at 442 (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)) (internal quotation marks omitted).

**2. Application**

*a. Legal Standard*

The Fourth Amendment proscribes unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless searches and seizures in the home are presumptively unreasonable. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). "The presumptive protection accorded people at home extends to outdoor areas traditionally known as 'curtilage'—areas that, like the inside of a house, 'harbor[ ] the intimate activity associated with the sanctity of a [person's] home and the privacies of life.'" *United States v. Struckman*, 603 F.3d 731, 737-38 (9th Cir. 2010) (quoting *United States v. Dunn*, 480 U.S. 294, 300 (1987)).

This presumption is not irrebuttable. *Id.* A warrantless search of the home may be reasonable where it fits within the emergency aid exception to the warrant requirement. *Id.* The emergency aid exception "stems from the police officers' community caretaking function and allows them to respond to emergency situations" that threaten life or limb[.]" *Id.* (quoting *United States v. Cervantes*, 219 F.3d 882, 889 (9th Cir.2000)).

The emergency aid exception to the warrant requirement applies where:

> (1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need.

*United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). To ensure that the sanctity of the home is protected, this exception is "narrow," with "rigorously guarded" boundaries. *Hopkins*, 573 F.3d at 763 (quoting *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir.2005)). Defendants bear the burden of proving that their search fits within the emergency aid exception. *Id.* at 764.

*b. Application*

It is undisputed that the defendant officers entered the Osborne home without a warrant. Plaintiffs offer evidence showing that the officers entered their backyard, which is sealed off by locked gates on either side. (Jonathan Decl. ¶ 16.) Plaintiffs' backyard is part of the curtilage of Plaintiffs'

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

home and is thus subject to Fourth Amendment Protection. *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010). There is also evidence indicating that: (1) Boyle entered the sunroom when he initially met Jonathan, (Jonathan Decl. ¶¶ 27–28); (2) that Boyle and Belt entered the home briefly to conduct their safety check before Adrian and Robert were handcuffed, (Munive. Decl. ¶¶ 23–24); (3) that officers seized Robert's cell phone, (Jonathan Decl. ¶¶ 77–79); and (4) that the defendant officers entered the home and searched it for an extended period of time after Adrian, Jonathan, and Robert were all secured in handcuffs outside of the home, (Jonathan Decl. ¶¶ 67–68).

Defendants claim that their actions were lawful pursuant to the emergency aid exception. They claim that they "had an objectively reasonable basis for concluding that there was an immediate need to protect others . . . from serious harm," *Snipe*, 515 F.3d at 952, because: (1) they knew that Adrian and/or Pamela had ordered a suicide kit; (2) they did not know whether the suicide kit had been delivered; (3) the presence of one of the Osborne's vehicles in front of the house led them to believe that someone was home; (4) the noises they heard in the home also led them to believe someone was home; and (5) whoever was home did not respond to their repeated knocks and announcements that they were the police. At the very least, on these facts, the officers' entry into the backyard did not violate clearly established law at the time of the search. *See Hao Qi-Gong v. City of Alameda*, No. C 03-05495 TEH, 2007 WL 160941, at *2, *5 (N.D. Cal. Jan. 17, 2007) (holding emergency aid exception allowed use of manager's key to open an apartment door where a relative repeatedly reported that the child was neglected and mistreated, officers knew the child was not in school, officers saw a shadowy presence passing over the peep hole of the apartment door, and no one answered their knocks and announcements that they were the police).[5]

However, the same analysis does not apply to the other searches or seizures encompassed in Plaintiffs' unreasonable search and seizure claim. As noted above, the facts arising after Jonathan and Boyle first saw each other are heavily disputed. In particular, the parties dispute whether and when Boyle entered the sunroom, whether Boyle forcibly pulled Jonathan outside, whether any of the Osbornes physically attempted to block the officers from entering the home, and whether any of the Osbornes physically resisted officers' attempts to subdue them. On this record, a rational trier of fact

---

[5] This analysis is not affected by Plaintiffs' article, published on the morning of June 13, 2011, indicating that the FBI raided a suicide kit operation and that the woman running it was no longer able to fill orders. (Steerign Decl., Ex. V.) Though this article is in fact about the operation at issue, there is no evidence that the defendant officers saw it or were aware of it. Moreover, even if the officers knew that the suicide kit order hadn't been filled, the knowledge that either Pamela or Adrian had taken steps toward committing suicide, when combined with the other evidence, would have sufficed to allow them to reasonably believe an emergency existed and was sufficient to justify their entry into the curtilage.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

could find that any reasonable basis for believing there was an emergency dissipated before the disputed searches or seizure occurred. *See, e.g.*, *United States v. Espinoza*, 403 F. App'x 239, 240 (9th Cir. 2010) (holding that there was no reasonable basis for believing an emergency existed once the officers secured the suspect, whom they knew lived alone and who was apparently alone in the house); *United States v. Peden*, No. CR. 06-0300 WBS, 2007 WL 2318977, at *5 (E.D. Cal. Aug. 13, 2007) (holding that emergency ceased shortly after the officers arrived because they quickly determined that the possibly suicidal girls were not a danger to themselves); *see also Hopkins*, 573 F.3d at 766 (indicating that every case upholding a warrantless search under the emergency aid exception in the Ninth Circuit involved significant evidence of an emergency). For the same reasons, Defendants fail to establish that any purportedly unreasonable search or seizure alleged in this claim was not contrary to clearly established law. *See, e.g.*, *Espinoza*, 403 F. App'x at 240; *Peden*, 2007 WL 2318977, at *5.

*People v. Ray*, 21 Cal. 4th 464 (1999) (plurality), does not change this result. *Ray* recognizes that the emergency aid doctrine is a subset of the community caretaking exception and that "circumstances short of a perceived emergency may justify a warrantless entry." *Id.* at 471, 473. Nevertheless, *Ray* also holds that under the community caretaking exception, an officer "must be able to point to specific and articulable facts from which he concluded that his action was necessary." *Id.* at 477. Construing the facts in Plaintiffs' favor, a rational trier could conclude that the defendant officers had no reason for believing that their actions were necessary. *Ray* similarly does not show that Defendants' actions were not in violation of clearly established law.

For the aforementioned reasons, the Court GRANTS IN PART Defendants' motion for summary judgment. The Court ENTERS JUDGMENT in Defendants' favor on Plaintiffs' unreasonable search and seizure claim to the extent this claim is based on Defendants' entry into the backyard by climbing the locked gate. The Court DENIES Defendants' motion for summary judgment as to all other aspects of Plaintiffs' unreasonable search and seizure claim.

    **B.**    **Fourth Amendment Excessive Force Claim**

Plaintiffs claim that Boyle, Munive, and Belt used excessive force on Jonathan and Adrian. Defendants argue that they are entitled to qualified immunity from this claim.

    **1.**    **Legal Standard**

Courts determine whether the force used to effect a particular seizure is reasonable under the Fourth Amendment by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Mattos*, 661 F.3d at 441 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of officers' use of

                      Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In assessing the nature and quality of the intrusion, courts consider the totality of circumstances, including three nonexclusive factors: (1) the severity of the crime at issue, "(2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting or attempting to evade arrest by flight." *Id.* The most important *Graham* factor is the second—whether the suspect posed an immediate threat to officers' or others' safety. *Mattos*, 661 F.3d at 441.

### 2. Application

As discussed above, the facts at surrounding the defendant officers' purported use of force on Jonathan and Adrian are heavily disputed. Each side submits admissible evidence supporting their version of events. On this record, a rational trier of fact could find that the defendant officers used excessive force on Jonathan or Adrian. Similarly, given that Plaintiffs submit sufficient evidence to allow a rational trier to find that neither Jonathan nor Adrian did anything more than verbally protest the officers' actions, Defendants fail to establish that they did not contravene clearly established law. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (finding it clearly established that any force is excessive where there is no need for any force at all). The Court therefore DENIES Defendants' motion for summary judgment as to Plaintiffs' excessive force claim.

### C. Fourth Amendment Unconstitutional Arrest Claim

#### 1. Legal Standard

An arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (noting that it is a "bedrock Fourth Amendment precept" that police need probable cause to make an arrest). Probable cause is only established if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation omitted).

#### 2. Application

The defendant officers arrested Jonathan and Adrian for "willfully resist[ing], delay[ing], or obstruct[ing] a peace officer" in violation of California Penal Code section 148(a)(1). Plaintiffs offer sufficient evidence to allow a rational trier of fact to that the only thing Jonathan or Adrian did which might violate § 148(a)(1) was to: (1) repeatedly verbally refuse consent to the defendant officers'

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

warrantless search of their home, and (2) with respect to Adrian, to verbally protest the officers' use of excessive force against Jonathan. A prudent officer could not have concluded that these verbal protests gave rise to probable cause to arrest either Jonathan or Adrian. Jonathan and Adrian had a constitutional right to refuse to consent to the officers' warrantless search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973). Moreover, the First Amendment protects Adrian's right to verbally protest an officer's unlawful actions. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Additionally, California courts "have . . . continually condemned any state practice which imposes adverse treatment on individuals for exercising constitutional rights." *People v. Miller*, 7 Cal.3d 219 (1972); *see also People v. Wetzel*, 11 Cal.3d 104 (1974). Thus a rational trier of fact could find that Defendants' arrest of Jonathan and Adrian was unconstitutional.

Additionally, Defendants fail to establish that they did not contravene clearly established law. *See Wetzel*, 11 Cal.3d at 108–10 (holding that officers lacked probable cause to arrest an occupant for doing no more than refusing to consent to a warrantless search of her property).

For the aforementioned reasons, the Court DENIES Defendants' motion for summary judgment as to Plaintiffs' unconstitutional arrest claim.

### D. Malicious Prosecution Claim Under 42 U.S.C. § 1983

Defendants' only argument in favor of summary judgment as to Plaintiffs' malicious prosecution claim is that they are entitled to summary judgment on the issue of probable cause. For the same reasons discussed above with respect to Plaintiffs' unreasonable arrest claim, the Court DENIES Defendants' motion for summary judgment with respect to Plaintiffs' malicious prosecution claim.

### V. Bifurcating First Amendment, Parent-Child Relationship, and Spousal Relationship Claims

A court may bifurcate a trial "to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court may do so *sua sponte*. *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997). This decision is committed to the district court's discretion. *Counts v. Burlington Northern R.R. Co.*, 952 F.2d 1136, 1139 (9th Cir. 1991).

Bifurcation of Plaintiffs' First Amendment right to petition, First Amendment retaliation, parent-child relationship, and spousal relationship claims will serve both interests. The Court recognizes that a subsequent trial may involve presenting some evidence twice. Nevertheless, there are subtle but important differences between Plaintiffs' § 1983 claims that are based on alleged Fourth Amendment violations and the other claims. For example, the Fourth Amendment claims are evaluated under a

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

reasonableness standard, while their Fourteenth Amendment familial and spousal relationship claims are evaluated under the "shocks the conscience" standard. *Compare* Graham, 490 U.S. at 395 (describing Fourth Amendment standard as a "reasonableness" standard) *with Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (finding that "shocks the conscience" standard applies to Fourteenth Amendment familial association claims). And compartmentalizing the Fourth Amendment claims from the other claims would be a difficult task for the jury: Evidence would be admitted for only certain claims, and the jury instructions would likely include numerous technical distinctions. Thus, the possibility of evidentiary spillover unnecessarily risks confusing the jury and prejudicing the parties. *See, e.g.*, *Computer Assocs. Intern., Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 67 (E.D.N.Y. 2007) (courts ought to consider whether "bifurcation will increase juror comprehension"). Moreover, simplifying the causes of action at trial will allow a smoother presentation of evidence—fewer objections and evidentiary circumscriptions will serve judicial efficiency. And resolution of the Fourth Amendment claims may obviate the need to try others—or at least parts of those claims—which also economizes the Court's and parties' time. Consequently, bifurcation is appropriate.

The Court thus BIFURCATES AND STAYS Plaintiffs' First Amendment right to petition, First Amendment retaliation, parent-child relationship, and spousal relationship claims from their remaining claims.[6] Resolution of the stayed claims is DEFERRED pending resolution of the unreasonable search and seizure, excessive force, unconstitutional arrest, and malicious prosecution claims.[7]

**VI.    Order**

1. For the aformentioned reasons, the Court GRANTS Defendants' motion for summary judgment and ENTERS JUDGMENT in Defendants' favor on Plaintiffs' unreasonable search and seizure claim, to the extent this claim is based on Defendants' entry of the backyard by circumventing the locked gate. The Court DENIES Defendants' motion for summary judgment on Plaintiffs' unreasonable search and seizure claim in all other respects.

2. For the aformentioned reasons, the Court DENIES Defendants' motion for summary judgment as to Plaintiffs' excessive force, unconstitutional arrest, and malicious prosecution claims.

3. For the aformentioned reasons, the Court ORDERS Plaintiffs to show cause why judgment

---

[6] The Court notes that is previously bifurcated and stayed the *Monell* claim. (Dkt. 25: Order, at 17.)

[7] In light of the foregoing, the Court DECLINES TO REACH Defendants' arguments with respect to the stayed claims.

:

Initials of Preparer          PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:13-cv-02150-SVW-AS | Date | April 8, 2015 |
|---|---|---|---|
| Title | Osborne et al. v. City of Upland et al. | | |

shouldn't be entered in favor of Mendenhall and the City on Plaintiffs' unreasonable search and seizure, excessive force, unconstitutional arrest, and malicious prosecution claims. Plaintiffs SHALL file their response within fourteen days of this Order's issuance.

    4. For the aforementioned reasons, the Court BIFURCATES AND STAYS Plaintiffs' First Amendment right to petition, First Amendment retaliation, parent-child relationship, and spousal relationship claims from their remaining claims. The Court DEFERS resolution of these claims pending resolution of the unreasonable search and seizure, excessive force, unconstitutional arrest, and malicious prosecution claims.

:

Initials of Preparer    PMC